IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   5:22-CR-425 (DNH) |
| ) | |
| **v.** ) | |
| ) | |
| **ERIC C. JACKSON,** ) | |
|     aka "Little E" and "King Money," ) | |
| ) | |
| **Defendant.** ) | |

### OFFER OF PROOF

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offense(s), and a factual basis for the defendant's guilty plea. **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity disagreement with any of the facts described in it.**

**1)** **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offense to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:** Life, pursuant to 21 U.S.C. § 841(b)(1)(A).

b) **Mandatory minimum term of imprisonment:** 10 years, pursuant to 21 U.S.C. § 841(b)(1)(A).

c) **Maximum fine:** $10,000,000, pursuant to 21 U.S.C. § 841(b)(1)(A).

d) **Supervised release term:** In addition to imposing any other penalty, the sentencing court must require the defendant to serve a term of supervised release between 5 years and life, to begin after imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). A violation of the conditions

of supervised release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 5 years.

e) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction pursuant to 18 U.S.C. § 3013.

**2)   Other Adverse Consequences:**

a) Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b) If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. If the defendant is a naturalized citizen, such conviction may result in denaturalization, followed by deportation or removal from the United States. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the Court, can predict with certainty the effect of the conviction on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

    c) A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

**3)** **<u>Elements of Offense:</u>**

    a) Two or more persons conspired to knowingly or intentionally distribute or possess with intent to distribute a controlled substance (as described in Count One of the indictment);

    b) The defendant joined that conspiracy, either at its inception or sometime during its existence, knowing the purpose of the conspiracy and intending to help it succeed; and

    c) As to the defendant, the conspiracy involved the distribution or possession with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers.

**4)** **<u>Factual Basis for Guilty Plea:</u>**

    a) Beginning no later than June 2020, through at least April 2021, at the request of Coconspirator A, the defendant knowingly participated in a conspiracy to distribute and possess with intent to distribute methamphetamine in the Syracuse, New York, area. As the defendant knew, it was part of the conspiracy to transport methamphetamine from locations including the San Diego, California area to Syracuse, New York, for distribution. The methamphetamine was transported by FedEx shipments and by car. The defendant participated in the conspiracy in part by (i) making travel arrangements for coconspirators, knowing that the purposes of the trips were to transport narcotics and narcotics proceeds; and (ii) handling certain financial aspects in furtherance of the sale of methamphetamine.

    b) For example, on or about November 28, 2020, the defendant flew from San Diego to Syracuse. On that trip, he met with coconspirators at a hotel room in Syracuse, where the transportation of methamphetamine and other controlled substances by car from San Diego

to Syracuse was discussed. The defendant then purchased a one-way airline ticket for Coconspirator B to fly to San Diego. The defendant knew that Coconspirator B was a driver for Coconspirator A and would be transporting controlled substances including methamphetamine from San Diego. On or about December 6, 2020, Oklahoma City Police stopped Coconspirator B, driving the rental car, and other coconspirators in a following car, while en route to Syracuse. In the rental car driven by Coconspirator B, police found 4,596 grams of methamphetamine and 109.9 grams of a mixture and substance containing fentanyl.

c) Additionally, during the conspiracy period, and in furtherance of it, the defendant knowingly transported cash narcotics proceeds to San Diego approximately 10 to 15 times by plane. The defendant flew on commercial flights from Syracuse to San Diego knowingly carrying between approximately $10,000 and $20,000 in cash narcotics proceeds each time. The defendant knew that Coconspirator A and other coconspirators sold the methamphetamine in Syracuse at prices between $500 and $900 per ounce. The defendant also called on customers who owed coconspirators money related to the purchase of methamphetamine, in an effort to collect on the drug debt.

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

*/s/ Matthew J. McCrobie*                                            7/23/2024
MATTHEW J. McCROBIE                               Date
Assistant United States Attorney
Bar Roll No. 702739